May it please the Court, Counsel, the issue for this case is the pre-trial issue, the Rovario issue. We would like to go ahead and reserve five minutes for rebuttal before we get into the issue is whether Valmer was entitled to discovery of the information in possession of the government showing that James was acting as a government agent. The disagreements in the case seem to center around three main issues. Issue number one, was Valmer in fact entitled to the information? Issue number two, in determining whether Valmer was entitled to the information, do we consider the record as a whole, including the information that came out at trial? And issue number three, assuming Valmer is correct in one and two, is this Court somehow precluded from granting relief because of concerns of jurisdiction and or preservation of error? First, was Mr. Valmer entitled to the information? The factual scenario is generally that Valmer was tried and convicted of count of conspiracy and multiple counts of distribution of a controlled substance. There were, Valmer acted as a broker between an undercover police officer, Detective Panuello, and various sellers of methamphetamine, got the methamphetamine for him. Valmer's defense was entrapment. His defense was that there was a person he knew only as helpful for him, James, if Valmer would make arrangements to sell to the undercover officer, Joe. And that was the reason that Valmer got involved in the sale of the methamphetamine, that he was a user, was involved in the drug culture, but would not have in any way been involved in the sales except for the inducements of James. I don't want to bleed too far into what you've identified as a subsequent question, but I want to make sure that I'm clear on that.   I'm going to say that entrapment was the defense. At what point in time during the district court proceedings did it become clear that entrapment was the defense? Because at the time, the magistrate judge first rules, he makes a reference, he says something about there is a vague reference to entrapment, but the inference I draw is at least at that point in time, it is not clear that defense is going to proceed on an entrapment theory. I disagree with that. Entrapment was always the defense in the case. What happened in what, as I understand the district court's rulings and the defense, the defense was that we have a C.I. who's working in this case, but he was not involved in the and helpful to the entrapment defense that Vollmer is intending to present. So entrapment was always the defense. My recollection is the magistrate ruled on the discovery motion. That was never appealed to the district court. At the time the trial is opening, the issue comes up again. Defense counsel says our case is going to be entrapment. District court says I'm not giving you the discovery. However, I'm going to wait down the road to see whether entrapment really comes out. Am I correct that that's how the scenario plays out? I think that's the district court query whether it in effect is ruling, not clear that it rules on the magistrate judge's ruling, but rather itself says I'm not going to give you the discovery for two, but it says it for two reasons. One is you never brought it up to me from the magistrate judge, and, two, it's not relevant, at least as I read it at this junction. That was early in the trial. I'm not entirely, we're not entirely in agreement on the you didn't bring it up to me from the magistrate judge. Well, he said it was untimely. Yeah, untimely. Yeah, untimely. So there was no, yeah, so there's a distinction there that could play out in this preservation of error. So I want to make sure we understand that distinction. And generally speaking, that's the point that I'm making. Can this Court look at the record as a whole, is that they brought it up and the magistrate judge is saying I don't understand why this is relevant and helpful. It comes up again pre-trial, the defense version is magistrate judge was the final ruling, we would still like the information, but as it were, we don't have anything additional we're going to bring up to you. Verify something for me that I was unclear of in your briefs, and that is it sounded like you were saying, or writing I should say, that the prejudice was in not being able to, in effect, have the discovery to you. I mean, you did raise, you meaning the defense, did raise entrapment. And your client testified, and it sounds like in the brief to me that you were saying, well, we didn't get a chance to really show what the inducements were. But in fact, your client testified to that, right? Yeah. There's no question about what the inducements actually were. Am I correct then, although I'm not sure it was directly raised, that the issue is the government involvement, government informant or not, is that government agent or not? That's the issue. That's where we're targeting now, and that's why we say we're looking at the record as a whole. That only came up during the closing argument. And our basic position is that when you look at the record of a whole and they're saying James is not an agent, he's just not an agent, there is information in the possession of the government which is relevant to that issue that should have been provided to the defense counsel. The closing was we don't know that James is an agent. There's nothing there that James is an agent. But I guess my question is, during trial, as I read it, the argument was we're going to raise entrapment, we want the discovery, but then it goes ahead and it's only in closing that, I mean, nobody argued further that, wow, look, we don't know if he's an agent, he's not an agent, it came up in closing and passing, but that was it as far as what was raised with the trial court. Again, a couple of things that I want to pressure on. It's not in passing. This is a big part of their defense. And it's not, the evidence don't show there was some statements along those lines, but it's, he's not an agent. The statement is James is not a government agent. It is a flat, affirmative statement, and it is our position that given what they have told the government or the magistrate judge pretrial, that is, this agent is working with us, he's an important part of our team, he is continually involved in drug investigations, and the testimony of the police detective on cross-examination, the undercover agent who made the buys. I met this guy through a confidential informant. A confidential informant is someone who works with us. A confidential informant is someone who signed up through paperwork. A confidential informant is someone who gets some benefit, payment or reduction on charges, and this confidential informant briefed me about Vollmer. Given those statements, there should have, there is information in the presence, in the possession of the government that should have been provided so that when the government is going to make that argument, the defense counsel has an opportunity to say, here's the paperwork where they signed up the confidential informant, James. James, confidential informant, government agent. Here's the inducements that he got. James got reduction in charges. James got paid off in order to be able to have the jury have the full information and to present a relevant, important part of their entrapment defense. That's the essence of our claim. Where's the entrapment? The entrapment then are the inducements. And the inducements can be something as a claim of friendship. And the inducement that the client testified that was offered was that the drug buddy he's got his drug buddy in trouble. His drug buddy comes to him and says, you know, if I can score some good drugs for my boss, Joe, and there's a case I signed, I don't have it in front of me. Those sorts of things are sufficient in order to present an entrapment to the defense. Yeah. Yeah. Yes. Well, the entrapment, it was clear it was argued throughout the trial. But the thing that kind of troubles me to some extent is, yes, the informant's involvement in the criminal activity was, yeah, at that initial stage. But then you got six more. It's over and over and over. That's not the charge of the charge of offenses. He then goes out six more times and you're saying he's entrapped six more times? The. Well, I mean, once he establishes the connection with Joe, he then comes back, Joe solicits him again now, and then he and he sells six more times. In fact, the first one wasn't even charged, as I recall. Yeah. The first where the informant was the person who was charged. And in those transactions, James isn't even there. I mean, and what, maybe I have a question for you is, I mean, it's a weak entrapment case. Yeah, clearly. So, I mean, that's one aspect of what I hear your concerns being. But it is an entrapment case, and it did go to the jury, and there was information that would have rebutted an important part of the government case. If the government had said, hey, look, this guy is our agent, everybody knows that. But look at these inducements, then we don't have our case. But what the government did is they withheld information showing he was an agent and then argued he was not an agent. If you're saying that, look, what's brought out was this was an informant, been used on numerous times, et cetera, you're saying, boy, what would have made the difference in this case if they knew he was an agent, right? Given the government argument, I'm saying that that information had to be revealed, yes. And that would have impacted things how? That would have impacted the entrapment defense because there's a reasonable possibility that the jury went to the first door out. And the first door out in this case is that before there can be any entrapment, there has to be inducements by a government agent. No government agent, doesn't matter what sort of inducements, you don't even get to that issue. What I'm saying is here, was the jury aware that the informant had been used before? No. Okay, I'm sorry, that was my mistake because I thought the jury was aware that it was a reliable informant, we had information and we went ahead. With Joe, with the, what was his name, Donnelly? My best recollection, and it was a very short case. Pardon me? Yeah. Very short case. The detective testifies that he worked with the informant, that the informant made the first introduction, that he bought drugs with the informant on the first time. And that's pretty much all we got out of who the informant was. Well, then he also said, and then he made six more buys. And then he went ahead and went forward and six more buys. And the defendant's statements or version is that this guy just kept pressuring him. He would have been perfectly, you know, if one would have satisfied Joe and helped his friend James, he was one and done. The guy kept going back to him and kept going back to him and kept going back to him until finally he said, hey, you know, I can't do this. I can't even get the quantity of drugs that this guy wants. And ultimately broke it off. And the- I'm confused on which guy you're talking about. James comes in and says, here's the problem. Now, James approaches your client several times and they've known each other for quite a while, apparently. Yes. And then they set up the relationship with the officer. His name just escaped me. And then subsequent contacts were made by the officer. James wasn't involved in the subsequent contacts. No, but what I'm saying is Vollmer's position is that if the first sale would have done it and Joe said, hey, this is great, and then James comes back and says, we're cool now, I'm working. My guy's out. Vollmer's out. He doesn't want to continue to do this. He continues to do this because the police officer continues to call him. And also the police officer offers some, hey, I'm making money for my mom with cancer. Your mom has cancer. You know, us two guys together dealing drugs and making money for our moms kind of thing. But he is willing to stop at any time. And I see there's kind of a question. Well, you got to argue a lot of this to the jury, didn't you? The fact that he was an agent, not at all. No, not the fact that he was an agent. But you got all your entrapment. Everything you're saying here was argued. Argued, that's it. No, the agent part wasn't argued. And the second part that wasn't argued is they were never able to get James. Who was it? He doesn't know where James is. The defense was never able to get James. James wanted, the defense wants the information pre-trial so that they can talk with James and see what James is going to have to say. And at this point, there is a possibility that James comes up and says, yeah, I was working for this guy. This was the hook I knew. I knew this would get him. But don't we have a situation where everything you've indicated other than the agents, if there was one, was indicated. And in applying the relevant factors, the government has indicated the informant would have confronted a threat to his safety. And given that James had nothing to do with the other six transactions, it's not sure, Claire, how much. Other than saying, other than maybe saying, see, not only did James come in and say all this stuff to my client, not only did he use all these inducements on my client, he was an agent. But other than that, that's the only thing you can add, right? Again, I don't think that's, you know, we're going to fight about the characterization of this, of course. I'm just trying to make sure I'm clear that that's all the difference. I'm not fighting with you. No, what we're saying is that there may have been more. And it wasn't just, you know, do the one. I mean, it wasn't, there never was. You never know if there's going to be more. You never know what's going to be in any case involving an informant. And there are settled principles as to whether, when, and if an informant's identity has to be disclosed. And here, the lie, almost all of it, what occurred, occurred between Joe and Jane, or Joe and your client. It had nothing to do with James. And the most you're saying you could have added here, other than speculation as to what might have been said about James, which is true in any informant case, is that you might have been able to show he was an agent. No, we would have been able to show he's an agent. Because that was the whole basis of the Rivario motion, is that he was an agent. And number two, we would have been able to – that is one of the two elements of our entrapment defense. We would have been able to have information to establish one of the two elements of our entrapment defense. I think we understand your position. Thank you. We should hear from the government. May it please the Court. Good morning. Good morning, counsel. I'm sorry, would you speak up, please? Yes, I apologize. May it please the Court. There are two points I want to make right up front. Identify yourself again. I'm not sure I got into it. Patrick Walsh for the United States, Your Honor. Thank you. There are two points I'd like to make right up front. The first is that this Court lacks jurisdiction to review the magistrate judge's decision because it was never appealed or objected to by the defense. The district court, in effect, ruled on it, did it not? Well, the district court ruled at page 36 that their request just immediately prior to trial was untimely. And irrelevant. So it did do a substantive ruling on it, did it not? It did, yes. Both substantively, but also, I think, after it first ruled substantively, it was irrelevant. And then because the district court had no idea that this had been raised before, it, in fact, had no idea that there was a confidential informant. The prosecutor then informed the judge, hey, this is untimely because they didn't object or raise it to you before. The judge then ruled it was untimely. And so I think the district judge there, you can infer. In each case, his ruling was it's untimely and irrelevant, which is a substantive ruling, is it not? He said it's irrelevant. I would argue the untimely. And sort of qualified by saying, I'm going to look down the road. If you've really got an entrapment defense, well, we may revisit. But you may be more, I think it might be more, I don't know, it might be more productive to go on. I would submit, Your Honor, that after he learned that it was not raised or appealed to, he ruled it was untimely, and that would be a jurisdictional ruling. But that can't, in the end, be right. Suppose the case has changed. Suppose entrapment isn't being pushed as the defense prior, or primary theory at the time of the magistrate judge ruling. Defense has no reason to appeal. They get to trial. They've got nothing else to go on. They go on entrapment. Circumstances have changed. Now, if the issue had never come up in front of the district judge, maybe you'd have something, although I'm skeptical. But the issue did come up in front of the district judge. And the district judge couldn't get away with saying, well, you should have appealed that two months ago when the issue wasn't relevant. I suggest you're better off moving to other issues, because I just don't see this one as a possible winner. Maybe Judge Clifton's statement is a little stronger than mine. The, it was not an abuse of discretion, then, by the magistrate judge. And since the court is focusing on the district court, the second point I want to make very clearly is that the government readily admitted to the jury that James was a confidential informant who had introduced the undercover officer to Mr. Valmer. That was admitted by Detective Panullo, the government's only witness, at the record on page 196, 223, 224, 225, and 226. Those were unclassified. That's not really the end of it, is it? Because being a confidential informant isn't enough for an entrapment case. What's the piece that's missing? That they were a government agent. And did the United States concede that? Your Honor, no. But, and here, in the closing, again. Let me, let me get right to the point. Yes, sir. What really concerns me about this is the statement made during the rebuttal. And I'll read it. She also mentions James. Where is James the confidential informant? Well, of course, as the evidence was demonstrated, James was not involved in these drug buys. And importantly, he's not a government agent. We know nothing about him. There's nothing to support he was an agent. And in fact, the instructions, blah, blah, blah, blah, blah, it is not enough for someone who has previously acted or been paid as an informant by the other side or federal agencies. We don't know the status. We don't know if he's an agent or not. That's the whole point. She couldn't have been entrapped by James. We don't know anything about James. But the prosecutor knew something about James. Isn't that true? I think the prosecutor was trying to. Did the prosecutor know about James? The prosecutor knew that James was an informant. And the prosecutor was the only person in the room who knew much of anything about James. The detective as well. But I understand your point, Your Honor. At an earlier point, I think maybe before the magistrate had said James was an agent. Now, maybe off the cuff, but I think there had been conflicting. And one of the arguments is there had been conflicting positions by the prosecution on this. Isn't that correct? I think what the prosecutor was trying to get at was a very specific jury instruction that the jury had in front of him. And that for entrapment to be, it has to be inducement by a government agent. And it's not that the person had ever been an agent of the government, but that he was an agent of the government at the time of the crimes charged. And that was the argument the prosecutor was trying to make. The issue before the jury is whether or not James is a government agent. Is that correct? Whether the defendant was induced by a government agent, yes, sir. And the argument being offered by the government was that he's not a government agent. But the argument, I think, was that at the time of the crimes charged, he was not a government agent. Because that's what the jury instruction specifically says. That's fine. But how is the defense supposed to deal with that issue if the defense isn't told who the hell James is or what relationship there is or how to find him? How is it that information is not critical to the defense? Because whoever James was, and obviously they knew his or they claimed to know his name, he was not involved in the crimes charged. Well, I'm not asking about that. I mean, I think it's probably not correct, but I'm not asking about that. You've just conceded that whether or not he's a government agent is a critical issue in the case. How is the defendant supposed to speak to that issue if it doesn't know who James is? The defendant presented his defense very elaborately. Well, so it's still relevant. It doesn't make any difference. Without any information about James, the government comes in at the end of the case and says, well, James is not an agent and here's this instruction. Our guy isn't an agent. And whether you say, the question is whether he was an agent at this transaction or a hundred transactions before, even if you're just saying now that the government meant he wasn't an agent in this transaction, they're entitled to know that, to find that out, to find out whatever information the government had that would indicate whether or not in this transaction, James was an agent of the government. And how are they supposed to do that? Your suggestion, Your Honor, would then allow just about every defendant in every case to seek disclosure of the confidential informant by claiming, no matter how tangential the relationship to the confidential informant is to the crime charge. Well, maybe it's different except that the prosecutor, the government made the point in the closing, it argued heatedly, well, maybe heatedly, I don't know if it's on pages, that James was not an agent. They said, we don't know anything about James. James isn't an agent. Then don't argue that to the jury, at the very least. But they did. The government argued that to the jury. Said to the jury, we have no idea, we don't know. Well, I mean, you can't have both, you know, I hate to use a cake and eat it too, you can't have it both ways. Well, those did come up after the defense raised it. But particularly, that's not really true. The jury knew a whole lot about this confidential informant. They had all kinds of information. Not the argument the government made. The government said, we don't know if he's an agent or not. And I have to say, what offends me is that the government has to know the answer to that question, and the government knows that they haven't shared the information, so the prosecutor is the only person in the room who can answer the question. And yet that prosecutor is arguing to the jury, we don't know who this person is. Isn't something amiss there? I think, again, what he's trying to focus on is the specific jury instruction which says that determining if they're a government agent, you have to look at the circumstances existing at the time the person's activities that are in connection with the crimes charged in this case. Right. And at that time, what did the defense know, the defense counsel know about Jane's relationship with the police? They knew that the confidential informant had introduced the undercover officer to the defendant over a week before the first charge defense. But no, no, no, isn't the answer, the defense doesn't know what the government knew. Yeah, they knew that he was introduced a week before the transaction, they know that James made the statements in Disney, because your client testified to that, or their client testified to that, sorry. That he allegedly made the statements. The point is, if the government is going to argue that we don't know anything about James, then it was certainly, isn't it required to at least tell, at least respond to discovery to the defense and say, we don't know, if that's really true. But the government said, we don't have to make discovery, we're not going to make discovery, but we're still going to argue, ladies and gentlemen of the jury, you can't find him as an agent. Well, and then to step back for a second, the information provided, both to the magistrate judge and in pretrial, included no facts about what type of entrapment there was. It was a bald claim of entrapment. They never said what the entrapment was, what the inducements were. And when we get to the inducements here, I think as the court already admitted, the overall claim of entrapment was highly suspect. Davis suggests that it requires, that entrapment is a concern that the government may take some activity that an otherwise law-abiding citizen would engage in a crime. And here, Mr. Valmer was, according to his testimony, a drug user, a felon, and a felon who possessed guns. My favorite fact is he apparently didn't know James's last name, but he's willing to do the deal. I mean, I don't quarrel with the proposition that, frankly, almost every entrapment defense is weak, and this may be on the weaker side of the scale, but I'm not sure that matters for this purpose. I mean, how does it matter for this purpose? Well, the, his, and his statement was, he ultimately said he was doing a favor for the defective. That's how he described his inducement, not to mention the predisposition and the recorded calls that replete with them. I think here, the prosecutor's language, again, I think while, while maybe inartful, was focused on the jury instruction. And it's not, it's, and his focus was that during the commission of these crimes, we know, there was nothing about the informant. There was nothing about James. James was nowhere to be seen, because he wasn't around. I think for an entrapment defense, that's really not the point. If defendant isn't, he's probably on tape, you know, he can't do much about it, but if he isn't contesting the fact that he sold the drugs, his defense is, I wouldn't have done it except that I was browbeaten by James or I owed James because I got him evicted from his apartment. So I did this stuff only because James made me, and I wouldn't have done it. I was induced by this government agent. Well, if that's the defense, then the focus really shifts away from what happened during the six drug buys. It shifts away to what the motivation was. Was defendant actually induced over his will, something he wouldn't have been predisposed to do, so on and so forth. That's what becomes relevant. And like four or five times, you've drawn a distinction that I'm simply, I mean, I understand, I think, the distinction, but I don't know what difference it makes. It's true the instructions make reference to entrapment requiring that the inducer be a government agent. I'm not sure how the point in time matters because defendant doesn't have information about what relationship James has with the government at any point in time other than the fact that he served as the confidential informant for this case, and in front of the magistrate judge, the government sought to maintain the confidentiality and identity because they're hoping he's going to produce useful information in other cases, which at least suggests the existence of an ongoing relationship with the guy. But the nature of the relationship is something the defense has a blank on, and so that's a critical issue. The government can't argue directly about the nature of the inducement because defendant is the only guy there to testify about it. James isn't there. So you can impugn the defendant's credibility, and you do, and you can question whether this guy could really have this indebtedness to James because they don't know what James's last name is, as the government does in argument. And I should say I understand when I say you, I don't mean you. I mean I understand it generically. And all of that's there, but really there's no direct testimony against what defendant says with regard to the nature of the inducement. So that's why, as I read the closing argument, it seems to me the government falls back on emphasizing, as it properly can under the law, that James isn't a government agent, so none of this matters. But that's where the problem is. Because if defense isn't given any information about James, there's no question about its relevance at that point, but defense is hamstrung, is handcuffed. It can't say anything. The reason the jury hasn't been told anything about James is defense hasn't been allowed to know anything about James itself. So that's where I have this problem. I mean, yeah, I think the case against him may be a strong case, but isn't he entitled to the information that's relevant? No. I don't believe he is. And again, while I focus on the crimes charged, there was also a bunch of recorded calls that were not, for whatever reason, transcribed. And again, there's no mention of James in those either. Well, let me ask you this. Judge Clifton is focusing on the argument that was made to the jury that they haven't shown that he's an agent, therefore they haven't prevailed in the entrapment defense. Their motion for discovery to find out whether this guy was an agent was made and denied when? I believe it was about seven months before trial. It was in July of 2005. Was there any objection to the argument that this guy was a, was not, had not been shown to be an agent? No, there wasn't, Your Honor. Does that make a difference? It does, Your Honor. I believe that we then move into a different standard. And again, the defendant can't meet that burden, the plain error standard, because again, the whole issue of the entrapment was just something a jury wouldn't buy. The jury disbelieved the defendant for many reasons, because he was clearly predisposed to the crime. The tapes are replete, the recorded transactions are replete with the defendant talking about what a big drug dealer he was, how he sold four ounces a day. He said, oh, look at the Sundance apartments. I sell drugs there. I sell over at that apartment. He talked about, he shot himself in the foot after he got in a dispute with the manager because he was selling drugs at the place. He had four or five different sources for, to purchase drugs, which, so he was predisposed. And he clearly wasn't induced, because he never said, hey, this is what I'm doing, helping James out. And obviously, there would have been much better ways to help James out if what he claimed James said was true. OK. So are you saying if you take out the references, the improper references in argument in the rebuttal to the failure to show that he was an agent, that there just wasn't any entrapment? Yes. And so, therefore, under the standard of review for that, there wouldn't be, what's the phrase I'm looking for, a substantial reason to reverse. It's not unfair. It's not unjust. Did you try the case? I did not, Your Honor. Well, I suggest that whatever happens, you might have a discussion when you get back about this kind of argument in the context of the position that the government has taken in the trial. And how much I enjoyed being here, Your Honor. Yes. Yes. No, absolutely. Feeling like a cat at a Doberman convention, are you? Ultimately, it wouldn't have mattered taking these things out. Ultimately, the government never denied that the confidential informant was not, in fact, that. And the defense was able to present their version of the facts. And even if the jury had accepted everything the defendant said, the result would have still been the same because this was not entrapment. Does the Court have any questions about the other two issues? If not, I'll submit on the rest of my time. Thank you, Your Honor. A couple of points. And from our prior discussion, it seems to me that one of the Court's concerns from our standpoint was, so what? And to speak to the mistrial issue, if they had presented a mistrial during closing argument, our position is we'd be in the same position we are here now, that basically because of the procedural posture, the only thing that the Court could have done at that time was declared a mistrial and start it over. And that's what we have to do now at this point is get a new trial. The second point, the point about, you know, there was no entrapment, there was sufficient information to go to the jury. And the problem in this circumstance is that the jury didn't get a fair shot at it because they didn't have all the information in front of them. And there is a reasonable probability that they may have convicted otherwise. There's also a reasonable probability they may not have. I'm sure I understand. You say there was enough to go to the jury. I mean, does the district court have the opportunity to say, this defense isn't good enough, I'm going to declare you guilty? I mean, I think it goes to the jury no matter what, doesn't it? I think there's a minimal showing that needs to go forward in order to get it entrapped. It is low, but that's the point. We're not a super jury. We're not here to say, hey, if we were on the jury box, we probably would have convicted. We're here to say. Harmless air standard. Harmless air, but we're here to say, is there a reasonable possibility? I'm going to interrupt you. Excuse me, there are two possibilities. There's a harmless air question, and then there's the preservation, is it, is it a plain air? I haven't worked out the second one entirely in my own mind, but those are the alternatives I hear from the government to say that it doesn't get viewed straight on, right or wrong. There are these other issues that must be weighed as well. Yeah, it's not a plain air. We've got a written motion asking for the information, and if the government had come forward at that time and said, hey, our theory is the guy's not an agent, then the magistrate judge and the district court judge said, okay, bring forward the information, and we would add a fair shot to try the case to the jury. It's not a harmless air because one of the two elements of the offense, or of the defense, information was withheld. I mean, that impacts due process under the Fifth Amendment under cases like Brady and Rovarel. That indicates his right to effectively present his defense under Sixth Amendment right to counsel. That impacts. Well, it almost sounds like you're arguing that the confidential informant has to always be disclosed, and that's not the law, is it? No, only when the government is saying the confidential informant is not an agent. If their position is, at the Rovarel. If in closing, the government attorney hadn't made that statement, we don't have a problem. Yeah, I'd say that's a fair statement, or if the government had made that up front at the Rovarel hearing and said, hey, this guy isn't a government agent. And there was no objection to the statement at the time, no request for a limiting instruction to the jury from the defense. At the time of the closing, was there? At the time of the closing, the defense made no objection. That's correct. Nor ask for a limiting instruction or any correcting instruction to the jury. No, and. So what should the district court have done? Excuse me? What should the district court have done? The district court had the opportunity and could have sui sponte declared a mistrial. What our position is, and that goes back to one of the second things that I talked about, is that when you look at the Rovarel ruling, you look at it in the context of the entire record, and when you look at it in the context of the entire record, it becomes clear that information that this guy, James, was an agent, was in the possession of the government, and it was not disclosed, and it should have been if they're going to make that argument at trial. I mean, I think that's it in a nutshell. Okay. Any other questions? Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, the last case, the calendar for this morning.
judges: Schroeder, Clifton, Schiavelli